IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JOYCE BENEMANN,** | ) | **CASE NO. 1:12CV0171** |
| Plaintiff, | ) | |
| v. | ) | **MAGISTRATE JUDGE GREG WHITE** |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| Defendant. | ) | **MEMORANDUM OPINION & ORDER** |

Plaintiff Joyce Benemann ("Benemann ") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Benemann's claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381 *et seq*.[1]  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is affirmed

## I.  Procedural History

On February 20, 2009, Benemann filed an application for POD, DIB, and SSI alleging a disability onset date of January 1, 1984, and claiming that she was disabled due to mood disorders.  Her application was denied both initially and upon reconsideration.  Benemann timely requested an administrative hearing.

On September 24, 2009, an Administrative Law Judge ("ALJ") held a hearing during which Benemann, represented by counsel, and an impartial vocational expert ("VE") testified.

---

[1] Benemann also filed an application for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Act, 42 U.S.C. §§ 416(i) & 423.  At the hearing, however, she amended her alleged onset date of disability to February 9, 2009, with the understanding that her Title II application would be withdrawn.  (Tr. 60-61.)  Accordingly, only the SSI application was before the ALJ.

Benemann withdrew her DIB and POD application as she was last insured in March, 1984.  (Tr. 60-61.)  On April 8, 2011, the ALJ found Benemann was able to perform a significant number of jobs in the national economy and, therefore, was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II.  Evidence

*Personal and Vocational Evidence*

Age 52 at the time of her administrative hearing, Benemann is a "person closely approaching advanced age" under social security regulations.  *See* 20 C.F.R. § 416.963.  Benemann has education through the eighth grade (Tr. 66) and past relevant work as a housekeeper.  (Tr. 35.)

*Hearing Testimony*

At the hearing, Benemann testified to the following:

- She lives with her boyfriend.  (Tr. 79.)  They share cooking duties.  (Tr. 79-80.)  She does the laundry, which is very stressful for her.  (Tr. 80-81.)

- She uses her computer about thirty minutes a day, looking up answers to questions that family members ask her.  (Tr. 82.)  She also plays solitaire.  (Tr. 83.)

- She attends church some Sundays, but does not attend the Wednesday services.  (Tr. 83.)

- She has friends that she visits two or three times per week.  (Tr. 83.)  She tries to have her grandsons (ages 11 and 13) sleep over about twice a month.  (Tr. 84.)  Having them stay over is not stressful; it is more stressful not knowing what they are exposed to when she does not have them.  (Tr. 84-85.)

- She used to play Bingo, but she no longer can concentrate or afford it.  (Tr. 85.)

- She has an eighth grade education and never attempted to obtain a GED due to an inability to remember things.  (Tr. 66.)

- She is able to read newspapers and magazines, as long as the stories are short.  *Id*.

- She was able to fill out the social security disability forms.  (Tr. 67.)

- She is forgetful, often feels anxious and jittery, has difficulty handling stress, and has to lay down a lot because of her medication.  (Tr. 70-71.)

- She can lift ten pounds, stand ten to fifteen minutes before she has to rest for thirty minutes, walk for fifteen minutes before she has to rest for one hour, and she needs ready access to a restroom.  (Tr. 75-76, 87.)

### III. Standard for Disability

A claimant may also be entitled to receive SSI benefits when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ found Benemann established medically determinable, severe impairments, due to depression and anxiety; however, her impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Benemann was found capable of performing her past work activities, and was determined to have a Residual Functional Capacity ("RFC") for a full range of work with some nonexertional limitations. The ALJ then used VE testimony to determine that Benemann was not disabled.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed

if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

**Psychiatric Opinions**

Benemann contends that the ALJ erred by assigning little weight, without sufficient explanation, to the opinion of her treating psychiatrist, Toni Johnson, M.D. (Doc. No. 16 at 7-

4

11.)  Benemann further contends that the ALJ erred in finding that the treating psychiatrist's opinion was inconsistent with the treatment notes.  *Id*. at 10.  Benemann claims error by the ALJ giving the state reviewing psychiatrists (whose review did not include the full record) more weight than the treating psychiatrist.  (Doc. No. 16 at 10.)  The Commissioner responds that the ALJ's analysis was consistent with social security rulings; and, that, more importantly, Benemann failed to prove that she could not perform the limited mental demands of unskilled work.  (Doc. No. 17 at 9-12.)

Social Security Regulations require the ALJ to evaluate every medical opinion of record regardless of its source.  *See* 20 C.F.R. § 416.927(c).  The required evaluation focuses on the opinions of treating physicians which are entitled to controlling weight as long as they are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record.  *Meece v. Barnhart*, 192 F. App'x 456, 560 (6th Cir. 2006) (*quoting* 20 C.F.R. § 404.1527(d)(2)).  "[A] finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009) (*quoting* Soc. Sec. Rul. 96-2p, 1996 SSR LEXIS 9 at *9); *Meece*, 192 Fed. App'x at 460-61 (Even if not entitled to controlling weight, the opinion of a treating physician is generally entitled to more weight than other medical opinions.)  Furthermore, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  *Blakley*, 581 F.3d at 408.[2]

Evidence from non-examining sources is also considered opinion evidence.  20 C.F.R. § 416.927(f).  The regulations mandate that "[u]nless the treating physician's opinion is given

---

[2]  Pursuant to 20 C.F.R. § 416.927(d)(2), when not assigning controlling weight to a treating physician's opinion, the Commissioner should consider the length of the relationship and frequency of examination, the nature and extent of the treatment relationship, how well-supported the opinion is by medical signs and laboratory findings, its consistency with the record as a whole, the treating source's specialization, the source's familiarity with the Social Security program and understanding of its evidentiary requirements, and the extent to which the source is familiar with other information in the case record relevant to the decision.

5

controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do work for us." 20 C.F.R. § 416.927(f)(2)(ii).

The opinion of a treating physician must be based upon sufficient medical data and detailed clinical and diagnostic test evidence. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Bogle v. Sullivan*, 998 F.2d 342, 347–48 (6th Cir. 1993); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record.") (*quoting* S.S.R. 96–2p). Moreover, the ALJ is not bound by conclusory statements of a treating physician that a claimant is disabled, but may reject such determinations when good reasons are identified for not accepting them. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986); *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984). According to 20 C.F.R. § 416.927(e)(1), the Social Security Commissioner makes the determination whether a claimant meets the statutory definition of disability. This necessarily includes a review of all the medical findings and other evidence that support a medical source's statement that one is disabled. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." *Id.* It is the Commissioner who must make the final decision on the ultimate issue of disability. *Duncan*, 801 F.2d at 855; *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Watkins v. Schweiker*, 667 F.2d 954, 958 n. 1 (11th Cir. 1982).

Here, during the relevant time period, Benemann sought treatment for depression and anxiety every two or three months from psychiatrist, Toni Johnson, M.D. (Tr. 468-469, 517-519, 576-577, 592-594, 637-639, 647-649, 674-676, 706-708, 713-715, 720-722.) Throughout treatment, Benemann reported feeling stressed about family issues. Dr. Johnson consistently prescribed Valium to 10 mg and Elavil, 100 mg. (Tr. 469.) Wellbutrin was later added. (Tr.

6

722.)

On April 16, 2009, Dr. Johnson's treatment notes regarding the objective mental exam indicate:

> Presents as usual casually dressed. Easily engaged in conversation. Very talkative. Focused on family dysfunction and problems of others. Mood depressed. Thoughts logical. No hopelessness. No suicidal ideation. Thoughts logical and insight. [sic]

(Tr. 468.) On the same day, Dr. Johnson completed a form regarding Benemann's work abilities indicating that she had no or poor abilities in the following areas:

- Maintain attention and concentration for extended periods of 2 hour segments
- Maintain regular attendance and be punctual within customary tolerances
- Work in coordination with or proximity to others without being unduly distracted or distracting
- Deal with work stresses
- Complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods
- Understand, remember and carry out complex job instructions
- Behave in an emotionally stable manner

(Tr. 460-461.) No medical/clinical findings to support the assessments were given.

In April, 2009, state agency reviewing psychologist Alice Chambly, Pys.D., found Benemann's mental impairments were not severe. (Tr. 456.)

In August, 2009, state agency reviewing psychologist Joan Williams, Ph.D., noted that Dr. Johnson's ratings suggesting "no" or "poor" functional capacity in certain areas was inconsistent with the levels otherwise reflected in Dr. Johnson's file. (Tr. 527.) Dr. Williams found that the treatment notes did not depict a high degree of mental functional deficiency, but instead demonstrated that Benemann prioritized domestic matters. *Id.* Dr. Williams completed a mental RFC assessment, finding Benemann to be moderately limited in maintaining concentration, persistence, or pace. (Tr. 539.) Dr. Williams concluded that despite Benemann's impairments, she could perform simple, routine tasks. (Tr. 525-527.)

On February 8, 2011, Dr. Johnson's treatment notes indicated that Benemann appeared "somewhat anxious and depressed" and "worrisome." (Tr. 706-708.) On the same day, Dr. Johnson completed a second work evaluation form indicating that Benemann had no or poor abilities in three areas:

7

>    •Maintain regular attendance and be punctual within customary tolerances
>    •Deal with work stresses
>    •Complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods

(Tr. 685-686.)  Furthermore, the form noted a change from "fair" to "good" in the ability to "respond appropriately to changes in routine settings." (Tr. 685.)  Again, Dr. Johnson provided no medical/clinical findings to support the assessment.

At a July 7, 2011 visit, Dr. Johnson noted the following under Objective/Mental Status Exam:

>    1. APPEARANCE: Casually dressed. Hair is thin.
>    2. BEHAVIOR: calm and talkative
>    3. ORIENTATION: Oriented to time, person & place
>    4. SPEECH: spontaneous, normal rate and flow, talkative
>    5.  THOUGHT PROCESS: logical, organized, logical
>    6. THOUGHT CONTENT: No evidence of paranois, No evidence of delusions. Worrisome. Negatively focused. Preoccupations with family dynamics, financial stress
>    7. SUICIDAL/HOMICIDAL IDEATION: No suicidal/homicidal ideations
>    8. PERCEPTIONS: No evidence of perceptual disturbance
>    9. MOOD: somewhat anxious and depressed.  'Sometimes i feel like I am going to have a nervous breakdown.'
>    10. AFFECT: range full
>    11. ATTENTION/CONCENTRATION: Sustained
>    12. RECENT AND REMOTE MEMORY: Within normal limits
>    13. JUDGMENT AND INSIGHT: Good

(Tr. 721.)  Again, Dr. Johnson diagnosed major depression and generalized anxiety, prescribing Wellbutrin XL (restarted at 8/3/2010 appointment) (Tr. 637), Valium, and Elavil. (Tr. 722.)

The ALJ considered the psychiatric opinions as follows:

> Upon careful consideration of the evidence, the undersigned finds that the limiting effects, persistence, and frequency of her symptoms are partially credible to [the] extent that the medical record, as a whole, substantiates these symptoms. For instance, on April 16, 2009, the claimant reported to her psychiatrist Dr. Johnson that she was increased stress [sic] and related symptoms from family strife. (Exhibit 7F, p7) Upon observation, Dr. Johnson noted that, despite these depressed and anxiety-related symptoms, the claimant was easily engaged in the conversation and her thoughts were logical and insightful and she did not express feelings of hopelessness or suicidal ideations. (Exhibit 7F, p.7) On July 16, 2009, the claimant reported similar symptoms, including a frequent desire not to face the day. (Exhibit 10F, p6) At the hearing, the claimant testified that, although she often does not want to get up in the morning, she does get up, get dressed, and takes her medications. On November 12, 2009, the claimant reported to Dr. Johnson that she was experiencing increased anxiety and depression because she had run out of her medication. (Exhibit 17F, p.1) She did express to Dr. Johnson how much better she felt with her medication. (Exhibit 17F, p1) On May 25, 2010, Dr. Johnson observed

>that the claimant was easily tearful, but cooperative. (Exhibit 17F, p. 50) She observed that the claimant's speech pattern was spontaneous with normal rate and flow. (Exhibit 17F, p.50) Her attention and concentration were sustained. (Exhibit 17F, p.50) Her remote and recent memory were within normal limits. (Exhibit 17F, p.50) Although rambling, Dr. Johnson observed that the claimant's thought process was logical and organized and she did not show evidence of paranoia or delusions aside from the increased preoccupation with family dynamics and financial stress. (Exhibit 17F, p.50) At the end of the May 2010 appointment, Dr. Johnson once more recommended that the claimant connect with the Adventures in Awareness program. (Exhibit 17F, p. 49) Accordingly, the undersigned finds that, while the nature of the claimant's symptoms is credible, the limiting effects, persistence, and frequency of these symptoms are not credible.
>
>As for the opinion evidence, the undersigned has considered the opinions of treating and licensed psychiatrist Dr. Johnson and the State Agency consultants' assessments. The undersigned gives partial weight to Dr. Johnson's mental residual functional capacity assessments from 2009 and 2011 (Exhibits 6F and 20F) Specifically, Dr. Johnson has opined that the claimant would be able to perform at least simple job instructions, which supports her aforementioned residual functional capacity. (Exhibit 20F) Regarding the issue of sustainability, the undersigned gives little weight to Dr. Johnson's opinion because the medical record does not substantiate it. Specifically, the claimant testified and has shown throughout the medical record that she is able to make her appointments without the assistance of others, take her medications as prescribed, perform simple work-related tasks around the house, care for others, including her grandchildren. Thus the undersigned gives partial weight to Dr. Johnson's opinion to the extent that it is consistent with her own treatment notes and the medical record as a whole.
>
>Additionally, the undersigned gives less weight to the State Agency consultants' assessments because the medical record and the claimant's subjective complaints establish that she has at least moderate difficulties in social functioning and ability to maintain concentration, persistence, and pace, which are reflected in the assessment of her residual functional capacity since February 9, 2009. (Exhibits 5F and 12F).

(Tr. 34-35.) The ALJ expressly considered Dr. Johnson's opinions and ascribed only partial weight to them and only "to the extent that it [wa]s consistent with her own treatment notes and the medical record as a whole." (Tr. 35.) Dr. Johnson's notes from Benemann's February 8, 2011 visit indicated that Benemann appeared "somewhat anxious and depressed" and "worrisome." (Tr. 707.) Dr. Johnson, however, does not explain how she then found Benemann on the same date to be an individual with "no" or "poor" abilities to "[m]aintain regular attendance and be punctual within customary tolerances; [d]eal with work stresses; and [c]omplete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 685-686.) Furthermore, Dr. Johnson's later opinion showed improvement. The

9

April, 2009 report indicated seven areas of functioning in which Benemann had "no" or "poor" abilities (Tr. 460-461), whereas in February, 2011, Dr. Johnson's report indicated three areas of poor functioning. (Tr. 685-686.) In addition, throughout the relevant time period, the evidence showed conservative treatment with essentially the same medications. The ALJ did credit Dr. Johnson's opinion that Benemann could perform simple job instructions. This was included in the RFC.

Moreover, upon reviewing the entire record, the ALJ properly weighed the state reviewing psychiatrists' opinions as the ALJ found that Benemann had limitations in addition to those assessed by Dr. Chambly, and adopted the functional limitation found by Dr. Williams. (Tr. 33, 35, 539.) Specifically, the ALJ found Benemann to have moderate difficulties in social functioning and the ability to maintain concentration, persistence, or pace, as was reflected in the RFC.[3] (Tr. 35.)

Based on the foregoing, the Court finds that the ALJ set forth sufficient reasons for the weight he accorded to Dr. Johnson's opinion, discussing both the supportability of the opinion and its consistency, or lack thereof, with the record as a whole. As such, Benemann's argument is without merit.

**Irritable Bowel Syndrome**

Benemann also contends that the ALJ erred in not finding her irritable bowel syndrome ("IBS") to be a severe impairment. (Doc. No. 16 at 11-12.) The Commissioner asserts that this

---

[3]The RFC was calculated as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: her work is limited to simple, routine, and repetive tasks that are performed in a work environment free of fast-paced production requirements involving only simple work-related decisions and routine workplace changes; this work can be performed around co-workers throughout the day but with only occasional and superficial interaction with co-workers.

(Tr. 33.)

was not error. (Doc. No 17 at 14-15.)

A colonoscopy and biopsy performed in December, 2008, indicated non-specific inflammation and findings favoring inflammatory bowel disease, specifically ulcerative colitis. (Tr. 342-343.) On February 2, 2009, Corey Sievers, M.D., noted that Benemann had chronic constipation and right lower quadrant pain, reaching a level of ten out of ten. (Tr. 384.) In May, 2009, doctors at MetroHealth diagnosed abdominal pain, constipation, and IBS. (Tr. 466.)

On September 2, 2009, a state reviewing physician James Gahman, M.D., confirmed the IBS diagnosis, but concluded that there was "no evidence of a physical impairment that would affect the claimant's ability to perform work activity." (Tr. 543.)

As defined by Social Security regulations, a "severe" impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). Courts, however, liberally construe the phrase "significantly limits" in favor of claimants. *Griffeth v. Comm'r of Soc. Sec.*, 217 F.App'x 425, 428 (S.D. Ohio Aug. 3, 2012). If the Commissioner rates the degree of limitation as none or mild, then the Commissioner will generally conclude that the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. § 416.920a(d).

The Sixth Circuit construes the Step Two severity regulation as a "*de minimis* hurdle," *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007), intended to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Nonetheless, if the ALJ finds at least one impairment to be "severe," he must move on to the subsequent steps in the evaluation. He is not required to continue to analyze the remainder of the claimant's impairments to determine whether they too are severe. *See Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 577 (6th Cir. 2009) (*citing Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *accord Hickox v. Comm'r of Soc. Sec.*, 2010 U.S. Dist. LEXIS 87813 at *13, 2010 WL 3385528 (W.D. Mich. Aug. 2, 2010) ("The finding of at least one severe impairment is sufficient to trigger further analysis. The ALJ's failure to find additional severe impairments at step 2 is 'legally irrelevant.'") (*quoting McGlothin v. Comm'r*,

11

299 Fed. Appx. 516, 522 (6th Cir. 2008)). After the ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" S.S.R. 96–8p, 1996 WL 374184, at *5. When the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does "not constitute reversible error." *Maziarz*, 837 F.2d at 244; *see also Nejat*, 359 Fed. App'x at 576-577.

> At Step Two, the ALJ discussed Benemann's IBS as follows:
>
> The claimant has also alleged acid reflux, irritable bowel syndrome, headaches, high blood pressure. Upon careful consideration of the evidence, including the claimant's hearing testimony, the undersigned finds that these impairments are not severe because they have not caused her more than minimal limitations in the ability to engage in basic work-related activities.
>
> Regarding the claimant's acid reflux and irritable bowel syndrome symptoms, she testified that she has twenty separate instances a month when she needs easy access to the bathroom. Although the claimant testified that she has not seen a gastroenterolgist recently due to financial constraints, the gastroenterology treatment notes corresponding in the record did not quantify her unplanned bowel movements to that extent. For instance, on May 1, 2009, the claimant reported to gastroenterolgist Corey Sievers, M.D., that her secondary symptoms from irritable bowel syndrome include constipation, for which she takes Colace, and occasional cramping and loose bowels with food. (Exhibit 7F, p.3) She did not indicate frequent unplanned bowel movements, except that food can aggravate her symptoms. (Exhibit 7F, p.3) Similarly, on December 10, 2009, the claimant reported to treating and licensed physician Byron Leak, M.D., that she was experiencing nausea and right lower quadrant abdominal pain intermittently even though she had a normal appetite and had denied abnormal weight loss, vomiting, stool changes, and blood in her stools. (Exhibit 17F, p.8) Moreover, on December 15, 2008, the claimant had a colonoscopy that showed a non-specific inflammation in a segment of her colon. (See, e.g., Exhibit 7F, p.3) Thus, the undersigned finds that the medical record does not establish that the claimant's irritable bowel syndrome is a severe impairment since February 9, 2009.

(Tr. 31.) The ALJ adequately addressed the symptoms from IBS at Step Two, finding it to be a non-severe impairment. At Step Four, although the ALJ did not specifically address IBS, the ALJ noted that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and SSRs 96-4p and 96-7p." (Tr. 34.)

Because Benemann has not pointed to a single medical opinion of record suggesting work-related limitations stemming from his IBS, the ALJ's failure to include additional restrictions at

12

step five was not unreasonable. Benemann merely cites complaints she made and assumes her IBS diagnosis automatically means that it must have more than a minimal effect on her work-related activities. This assumption, however, is not grounded in the record. While IBS undoubtedly can result in more than *de minimis* limitations, this is not always the case. In fact, it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990) (diagnosis of impairment does not indicate severity of impairment). *See also Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008) (*citing Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). Based upon the record, the ALJ properly found Benemann's IBS not to be a severe impairment limiting her work activities.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence. Accordingly, the decision of the Commissioner is affirmed.

IT IS SO ORDERED.

s/ Greg White  
United States Magistrate Judge

Date: November 1, 2012